## DECEMBER TERM, 1843.

### Benjamin Williams *v.* F. L. Claiborne, *et al.*

Where general language in a deed of marriage settlement is inconsistent, and in conflict with the purposes as defined in the deed, which the parties had in contemplation by the settlement, such general language will be qualified and restricted by the definite recitals of the deed.

In the construction of deeds, the intention to be gathered from the whole instrument must prevail, unless inconsistent with settled rules of law.

W. (in debt) and H. (possessed of large property) being about to marry, by deed of settlement, before the marriage, convey to a trustee for. H.'s *sole and separate use, all her property, and the interest, income, and proceeds thereof,* on trust. 1. For the use of W. and H., *for their natural lives,* subject to disposal by H., by will. 2. That H. should have, during her life, full control over the property, and that it should not be subject to W.'s debts or his control. 3. That the trustee might sell when requested ; *held,* that W., on the death of H., had no right in the property thus conveyed, or to a participation in the proceeds, income, or profits of it.

W., about to marry H., declares by deed his intention to secure to H. the separate use and disposal of the property conveyed by the deed, and also the income and profits of it ; *held,* that *W.* is *estopped* by the recitals of the deed, to set up a claim either to the property or the profits thereof.

The complainant's right to a recovery in this case turned entirely upon the construction of the marriage contract between himself and his wife.

The following are such portions of the deed as it is deemed necessary to publish :

" This indenture of three parts, made this tenth day of November, in the year of our Lord one thousand eight hundred and thirty-six, between Benjamin Williams of the county of Madison and State of Mississippi, of the first part ; and Jane Hoggatt of the county of Adams, and State aforesaid, of the second part ; and F. L. Claiborne of the county of Adams, and State aforesaid, trustee as hereinafter mentioned, of the third part : whereas, a marriage is intended to be had and solemnized between the said Benjamin Williams and the said Jane Hoggatt, and it is their intention to assign and secure to the separate use and disposal of the said Jane Hoggatt, all and every part and portion of her real and personal property, of what kind soever, and thereby not only to make a cer-

tain, liberal, and sure provision for her support and maintenance, but also to secure to her own separate use and disposal all her real and personal property aforesaid ; and whereas, her property, real and personal, does and will consist in such sums of money and other personal property, and of such real property, as she, the said Jane Hoggatt, does now possess, and of such property as she may hereafter obtain by purchase, descent, devise, gift, or otherwise ; and whereas, it is agreed by and between the said Benjamin Williams, and the said Jane Hoggatt his intended wife, that all her said property that she now does possess, or may hereafter in due course of law become entitled to, shall be assigned to the said F. L. Claiborne, trustee as aforenamed, to hold upon such trusts as are hereinafter named, mentioned, and provided respecting the same.

" Now this indenture witnesseth, that the said Benjamin Williams, and Jane Hoggatt his intended wife, for and in consideration of the said intended marriage and of the trust hereinafter mentioned, and of five dollars to the said Williams, in hand paid (the receipt of which is acknowledged), have granted, bargained, sold, delivered, and assigned, and do hereby, &c., unto the said party of the third part, all the estate, right, title, interest, claim, and demand whatsoever, of the said Jane Hoggatt, of, in, and to all the lands, tenements, and premises whatsoever, which she may now possess, or hereafter may possess and hold by gift, devise, or descent, or in any manner whatever ; and also all sums of money, goods, chattels, rights, credits, or personal property of any description whatever, which she either now possesses, or to which she may be hereafter entitled in any manner whatsoever ; *to have and to hold,* &c., upon the following trusts, to wit :

" *First.* That the said trustee or his successors shall hold the said property, real and personal, to the use, benefit, and behoof of the said Benjamin Williams and Jane Hoggatt, for and during the term of their natural lives, and, after their death, to the use of the heirs of the body of the said Jane Hoggatt, by the said Benjamin Williams to be begotten ; and, in default of such heirs, then to the right heirs of the said Jane Hoggatt ; subject, nevertheless, to such last will and testament of the said Jane Hoggatt, hereinafter provided for and mentioned.

Williams *v.* Claiborne, et al.

" *Secondly.* And upon the further trust and confidence, that during the lifetime of the said Jane Hoggatt, she shall at all times have the full and complete control of her said property, real and personal, as aforementioned, and that the said Benjamin Williams shall not intermeddle therewith ; and that the same or any part thereof shall not be liable to his control, debts, or disposal, and under the control of the said Jane Hoggatt, or of the said trustee, under her direction.

" *Thirdly.* And upon the further trust and confidence, that the said trustee or his successor, &c., shall and will, upon the reasonable request of the said Benjamin Williams and Jane Hoggatt, and at the wish of the said Jane Hoggatt, in writing, under her hand and seal, and duly acknowleged, bargain, sell, &c., unto such person, &c., as the said Benjamin and Jane may appoint, all or any of · the said real and personal estate, &c.

" And the said Benjamin Williams, for himself, his heirs, executors, and administrators, doth covenant and agree to and with the said F. L. Claiborne, &c., that the property, real and personal, assigned as aforesaid, and the interest, and income, and proceeds thereof, in all respects whatever, shall be for the sole and separate use, benefit, and disposal of the said Jane Hoggatt, the said marriage notwithstanding ; and that the same shall not be subject to the control, direction, or disposition of the said Benjamin Williams, or liable for his debts."

By the other provisions of the deed, it was stipulated, that Jane Hoggatt might receive and dispose of any part of the property, as she desired, during the coverture, in any manner she might choose : that if she survived her husband, or if a divorce *a vinculo matrimonii,* took place, all the undisposed of effects in the hands of the trustee should " be at her entire, separate, and sole disposal and control " : that she might, by her last will and testament, dispose of all the property, real and personal, with the interest, income, and proceeds, according to her pleasure.

The trustee by the deed accepted the trusts, and covenanted to account " from time to time with the said Benjamin Williams and Jane Hoggatt," &c., and also not to waste the trust property.

It was further stipulated, in the conclusion of the deed, that if

the trustee died, resigned, or refused to act, the Probate Court of Adams county should appoint a successor.

All of the other facts necessary for a full understanding of this case are embraced in the Chancellor's opinion.

*Hewit,* for the demurrer.

Has the complainant any interest, after the death of Mrs. Williams, in the property embraced in the marriage settlement ? What is the rule of construction in such cases ? The *context* is the criterion of interpretation to the intent of the *party.* 1 Mass. 219 ; .2 ib. 56 ; 4 ib. 135 ; 12 John. Ca. 398.

The deed of settlement recites that it was to secure the estate to the sole and separate use of Mrs. Williams, which must control the construction of the whole deed. 22 vol. Law Lib. 76 ; 1 Yates, 225.

*Jennings,* for complainant.

The demurrer must be overruled. The deed creates an *estate tail,* which our statute converts into an estate *in fee simple,* in the first taker. Williams has, accordingly, a vested absolute estate. The Court will not apply the lax rules of construction applying to a *will,* to a deed. 1 Vernon, 343.

The first clause in a *deed,* and the last in a *will,* prevail where there are repugnant clauses. Noys's Maxims, 34 ; 2 Bl. 182.

The demurrer can only prevail by holding the *first* clause *void,* as being repugnant. To divest the husband of his *marital* rights over the property of the wife, there must be clear and explicit language indicating such intention. The true construction, in order to make the whole instrument stand, is, that the husband was to take one half and the wife the other.

*Winchester,* for complainant.

The whole of the property, real and personal, is conveyed to Claiborne, to have and to hold to the use of Benjamin and Jane Williams, for their natural lives, and after their deaths, to the heirs of their bodies.

This creates a fee tail in the usee, which, under the statute of Mississippi, immediately executed in them a fee simple, in joint-

tenancy. The limitation in default of such heirs of their bodies, to the heirs of Jane Hoggatt, is void.

The further trusts are,

1. To secure the wife the full and complete control of her property aforesaid, so that it should not be subject to the debts, disposal, or intermeddling of her husband, but be under her control, or the control of the trustees, subject to her direction.

2. That at the reasonable request of both husband and wife, the trustees should sell and convey all or any portion of said property, to such person, and for such consideration, as they should appoint.

*Covenants.* — Williams, the husband, covenants with the trustee, that the property assigned as aforesaid, and the interest, income, and proceeds, shall be for the sole and separate use, benefit, and disposal of his wife, and not subject to his control or disposition, nor liable to his debts.

2. Also, covenants with her (a void covenant, as to his interest in the joint tenancy), that she may demand and receive any part of said property or its proceeds, and dispose thereof, as she pleases, and her trustee may deliver or transfer to her any part of said estate or its income, when she may choose to withdraw from said trust, and her receipt shall be a discharge of the trustee. This, like the former, must be limited to her interest in the joint-tenancy ; if extended to his interest, it is void.

3. That if she survives her husband, or upon divorce *a vinculo,* she should have the entire and sole disposal and control of such property aforesaid, as shall remain in trustee's hands, and trustee may transfer and deliver the same to her.

Claiborne covenants to perform the trusts, and to account to and with both Williams and his wife, for all receipts, actings, and doings, and to manage for the benefit of all parties concerned in interest.

These covenants show that the former covenants relate only to her interest in the joint-tenancy.

It is a marriage contract, and on good consideration, viz. but for the marriage contract, he would have become owner of all the personal property, upon the marriage.

The construction, therefore, must be in his favor, as it is a contract to divest him of an interest which the law would give.

1. Independent of our statute destroying survivorship, an estate in joint-tenancy being created, and vested in the husband and wife in fee simple, and taking effect upon the marriage, Williams would be entitled to the whole by survivorship.    How. and Hutch. 348, sec. 24 ; 357, sec. 59 ; Noys's Maxims, 34 ; Littleton, sec. 665 ; Co. Litt. 187 ; 2 Blackstone, 182.

Husband and wife being seised *per tout* only, and not *per my et per tout*, it might be contended, that our statute in relation to survivorship does not apply, and that Williams takes the whole by survivorship.    But as that would be inconsistent with the intention of the whole instrument merely to abridge the marital rights of the husband, and give the wife a separate property, we do not contend that the doctrine of survivorship applies.

2. The only construction which can be put upon the whole instrument, so as to effect its general intention, and give effect to all the clauses of the contract, is, that in the joint-tenancy created, the wife has a separate and sole interest in one half the property, which can neither be alienated, controlled, nor the profits received by the husband, or be subjected to his debts; and that, as to the other half, it belonged solely to the husband.

Unless this construction be adopted, some of the clauses of the contract must yield to others, and in that event every clause, subsequent to that which conveys the property for the use of the husband and wife and the heirs of their body, must be controlled by that clause, and if repugnant to it, or so far as repugnant to it, are void.    How. and Hutch. 349, sec. 29.

" The conveyance must very clearly indicate that the property is to be for the separate use of the wife, otherwise the marital right attaches"; and " courts of equity will not deprive the husband of his wife's property, to which he is by law entitled, unless the intention be clear that he was not to derive any benefit from it. "    5 Vesey, 516 ; 2 Roper on Property, 163 ; 4 Desaus. 456 ; 1 Yates, 432 ; 22 vol. Law Library, 76 ; 3 Vesey, 166.

The rules of interpretation of deeds and conveyances are the same in equity as at law.    3 Blackstone, Com. 434 ; 2 Burrow, 1108.

If there be two clauses in a deed repugnant the one to the other,

the first is to be taken, the last rejected.    Shepherd's Touchstone, 85 ; Bacon's Abridgment, Title *Grant.*

The rule, as extracted from the books generally, and upon principle, is, that the general intention, to be collected from the face of the whole instrument, shall be carried into effect so far as it can be done by reconciling all the clauses to each other, consistent with the interpretation of the law upon each and all the clauses.    If clauses are clear and unambiguous, and admit of but one interpretation, and cannot be reconciled with each other, then all conditions, powers, limitations of power, and trusts, repugnant to and inconsistent with the estate created, are so far void as they are repugnant.

Either an estate in fee simple was vested in the husband and wife, as an estate in equity, or an estate for their natural lives, after their deaths remainder to the heirs of their body, as purchasers.

It is immaterial on the demurrer what estate is given him, and the determination of what estate will arise at the hearing.    If he has any estate, he has a right to some relief, upon the allegations of the bill and supplemental bill.

As a general rule, courts of equity, in regard to trust estates, adopt the rules of law, which are applicable to legal estates.    4 Paige, 352.

It is said to be a rule in chancery, that if lands are vested in trustees in fee simple, for one and the heirs of his body, with remainder over, the trustees are not to convey in fee simple, but in fee tail.    1 Saunders on Uses and Trusts, 250.

If a statute were passed, like that of New York, converting the estate of *cestui que trusts* into legal estates, this would be construed a fee tail.    Shelly's case, in Coke, and Fearne on Remainders.

*Montgomery* and *Boyd,* for defendants.

The first general rule of construction, applicable to marriage agreements, &c. is, that the intention of the parties shall prevail, when it can be ascertained by a careful examination of the whole instrument.    And all parts of the instrument shall be so construed, that the whole shall stand together, if possible.    3 Cranch, 235 ;

1 Mass. Rep. 219 ; 2 Mass. R. 56 ; 3 Johns. Rep. 388 ; 4 Mass. R. 135.

It is conceded that Jane Hoggatt took an estate tail in the use according to the first use declared, but it is not perceived what advantage Williams can have from that estate. The same declaration clearly gives him but a life-estate, and that subject to a power of appointment in Jane.

It is not material that the power of appointment is a mere covenant, because covenants, entered into before marriage, will be enforced in equity ; and a covenant to permit an appointment, and to carry into effect such appointment, is sufficient authority to a wife to bequeath her separate estate. 1 Yates, 225, 226.

Where lands are devised for the separate use of the wife, it will be held that the use is not executed. Clancy on Married Women, 256.

CHANCELLOR. In November, 1836, the complainant, Benjamin Williams, being about to consummate a marriage with Jane Hoggatt, they mutually united in a deed of marriage settlement ; in which it is declared to be their " intention" not only to secure to her a liberal and sure support, but also to secure to her the " *separate use and disposal* of all the property, of whatsoever kind, which she then held, or might thereafter acquire, " by purchase, descent, gift, or otherwise." The deed then conveys all her property, of every character, to F. L. Claiborne, in trust : 1. For the use of the complainant and the said Jane, during their natural lives, with a limitation over to the heirs of their body ; subject, however, to be disposed of by her, by last will and testament. 2. That the said Jane was to have full and complete control over the property so conveyed, during her life, and that the same should not be liable to Williams's debts, nor subject to his control or disposal. 3. That the trustee would sell any portion of the property, which the other parties might direct and request. It appears, that the contemplated marriage was consummated the next day after the execution of the deed ; and that, after having lived together a few months, a separation took place. In February, 1838, the complainant filed his original bill, against the trustee in the deed, praying a decree

against him for one half of the annual profits accruing from the estate embraced in the deed. Mrs. Williams died some time afterwards, having disposed of all her separate property by her last will and testament. The complainant then filed a bill of revivor and supplement, making the legatees and executors under the will parties defendant. These new parties, between whom and the complainant the controversy is now exclusively confined, have demurred generally to the bill ; and insist, that upon a just construction of the deed of settlement, the complainant has no right whatsoever, either to the property there conveyed, or to the proceeds, rents, or profits thereof. The case must turn upon the construction of the deed. The whole difficulty arises out of the trust first declared, to wit : that the property should be held for the use and benefit of Williams and his wife, during their natural lives. This provision introduces some obscurity, and difficulty of construction ; because its terms are not readily reconcilable with those which both precede and follow it. It is impossible to make this provision harmonize with the other portions of the deed, except by limiting and restricting its language, so as to make it conform to the purposes and intentions, which the parties had in view, by the execution of the instrument. What those purposes were is distinctly pointed out by the bill itself, which informs us that the complainant, being in debt, and being about to marry a lady with large estate, he executed the deed in question, in order that her property might not be subjected to the payment of his debts, and that she might hold it for her separate use, and at her separate disposal. But this object could not be accomplished, if, as is now contended, one half the annual income of the estate is reserved to his use ; because, to that extent her property *would have been* subjected to the payment of his debts. The recital in the deed also shows, that the chief object was the relinquishment, on the part of Williams, of all claim to her property, which would otherwise have attached by virtue of the marriage. It is, therefore, in the nature and character of a deed of release. And I understand it to be a settled rule of construction, of deeds of that character, that where there is a particular recital, defining the purposes which the parties have in contemplation, any general language which may follow, inconsist-

ent with the purposes thus declared, will be qualified and restricted by the recital. *Cole* v. *Gibbs,* 1 Ves. sen. 507 ; *M'Intyre* v. *Williamson,* 1 Edw. Ch. R. 33 ; *Jackson* v. *Stackhouse,* 1 Cow. R. 112 ; *Woods* v. *Nashua Manuf. Co.* ; 5 New Hampshire Rep. 467.   This latter case extends this rule of construction to deeds of every description.   I take it that in this, as in every other description of deed or instrument, the construction must follow the intention to be collected from the whole instrument ; and that when thus ascertained, it must prevail over everything else, if it be not inconsistent with settled rules of law.   In the case of *M'Guire* v. *Scully,* 1 Beatty's Rep. 378, it is said that equity exercises a power to modify and control the ordinary sense of language used in marriage articles, so as to give effect to the real intention, according to the context of the articles.   But the provision under which Williams claims, is not only inconsistent with the general purpose of the instrument, as disclosed by the recital thereof, and as avowed by the bill, but is equally at variance with the other trusts and covenants, which immediately follow it.   The next succeeding trust declares, that she was to have full and complete control over the property thereby conveyed, during her natural life ; and that it was not to be liable to the debts of Williams, nor subject to his *control or disposal.*   But this provision must entirely fail, if the first is permitted to stand ; because, in that event, one half the income and profits of the estate would be both liable *to his debts* and subject to his disposal.   If, however, any doubt could arise as to the intention of excluding Williams from any interest in the income or profits of the estate, that doubt is removed by his own explicit covenant in the deed, by which he stipulates, that all her property of every description, " and *the interest, income, and proceeds thereof,"* shall be held for her " *sole and separate use, benefit, and disposal,"* not subject to his " direction, control, or disposition." He then further covenants, that she might, at any time during the coverture, by her simple order, withdraw any portion of the property, real or personal, or the " interest, income, or proceeds thereof," from the hands of the trustee, and dispose of the same at her pleasure.   This is utterly inconsistent with the notion of any right in Williams over property, which the wife was thus left free to

Williams *v*. Claiborne, et al.

hold and dispose of, at her will and pleasure, without his permis-, sion or sanction. Here, then, we have the recital in the deed ; the avowal in the bill, and the covenants of Williams, all concurring to show, that the intention upon which the parties treated, concluded, and acted, was to exclude him, not only from any right in the property itself ; but from any participation in the proceeds, income, or profits thereof. Guided by the intention of the parties as thus elicited, I find it impossible to give effect to that part of the deed upon which the bill proceeds, without violating the leading purpose for which the settlement was made ; and a settled rule of construction requires, that the intent of the parties shall, if possible, be carried into effect, rather than the whole instrument should fail. But apart from what appears to be the general intention of the deed, I think that Williams is clearly precluded from setting up any interest under it, upon the principles of an *estoppel*. 1. First, he is estopped by the recital in the deed, which declares its purpose to be, to secure the property to the separate use and disposal of his intended wife. It is clear, that separate property carries with it a separate right to the income and profits thereof. The recitals of a deed are always evidence against the party making them, and he is estopped to deny their truth, or do any other act, inconsistent therewith. 9 *Wend. 209.*

2. But he is doubly estopped by his covenants, in which he secures to the sole and separate use and benefit of his wife, those very *incomes* and *profits*, which he now seeks to recover. I cannot decree to a party that which, by his express and voluntary covenant, he has renounced all claim to. I am then of opinion, that the demurrer must be sustained, and the bill dismissed, at the costs of the complainant. Let a decree be prepared accordingly.